Welch, J.
The act of April 25, 1873 (70 Ohio L. 161),. provides that “ any corporation, operating a railroad in whole or in part within this State may demand and receive for the transportation of passengers on said road not exceeding three cents per mile,” and imposes penalties for the- *91 charging or receiving of any higher rate of fare. If this ■ provision is binding upon the Lake Shore and Michigan Southern Railway Company, then the conviction was rightful, and the judgment must be affirmed. Whether this provision is binding upon the company is the only question which we find it necessary to decide in the case.
The Lake Shore and Michigan Southern Railway Com- - pany is a consolidated company, formed by the union of several original and independent railroad companies, its line of road extending from Buffalo, in the State of New York, to Chicago, in the State of Illinois. Among the companies forming this consolidation were two Ohio companies, chartered and organized before the adoption of the present constitution, and whose charters were, therefore, not subject to the provision of the present constitution which gives to the legislature the power of alteration, amendment, and repeal of charters, and subjects the stockholders to individual liability for debts. One of these Ohio companies was the Junction Railroad Company, whose line extended from Cleveland to Sandusky, and whose charter contained no limitation as to rates of fare; and it was for passage-over that part of this line which lies between Elyria and Cleveland that the fare in controversy was so charged. It is admitted that this charge was authorized by the charter of the Junction Railroad Company, and that the right to fix its rates of fare ad libitum still subsists, unless the same has been surrendered or extinguished by its act of consolidation.
The consolidation took place in 1869, and was effected in all respects in pursuance of the act of April 10,1856 (4 Curwen, 2791; S. & C. 327); and the claim is that a consolidation under that act is to'be regarded in law as a surrender or relinquishment of the several individual charters-of the companies so uniting, and the acceptance of a charter de novo from the state. If such be the law, it can not well be denied that the consolidated company, organized, as it was, after the taking effect of the present constitution, is bound by and subject to all its provisions. Is such the- *92 legal effect of the consolidation ? Are the old companies ■dissolved, and their charters extinguished, and is the consoli•dated company a new corporation, receiving all its rights and powers directly from the legislature ?
In the light of the decision by this court in the case of The State of Ohio v. Sherman et al. (22 Ohio St. 411), we do not see how an affirmative answer to these questions can be avoided. In the case referred to, the court held, substantially, that a transfer of all its franchises by a corporation, in pursuance of an act of the. legislature authorizing the same, is in legal effect a grant by the legislature of similars, franchises to the transferees, and constitutes them a new •corporation. In that ease, it was held, however, that the grant so made did not have the effect to constitute the transferees a legal corpoi’ation, for the reason that their organization was not authorized, or was not effected in a way which made them individually liable as stockholders in the new corporation. ' No such defect or impediment ■exists in the present case; and surely, if a . statute of the kind in question in the case referred to, is to be regarded as a statute creating a new corporation, much more is the statute in question here, the act of 1856, under which the Lake Shore and Michigan Southern Railway Company was organized, to be so regarded. This statute plainly contemplates and expressly provides for the formation of a “ new corporation.” The old stock is to be surrendered or extinguished; .a new amount of capital stock is to be agreed upon and distributed to parties who voluntarily take the same; and a certificate is to be filed with the secretary of state, which, it is declared, “ shall be evidence of the existence of such corporation.” Section 3 of the act declares that the companies thus uniting “ shall be taken and deemed to be one corporation.” Section 5 provides for the election of a board of directors of the new corporation, which it denominates a “ corporation created by ” the consolidation, “ and by the provisions of” that act, and vests in “such new -corporation,” all and singular “the rights, privileges, and franchises ” of the “former corporations.” Nothing could be *93 much plainer, it seems to us, than that a consolidated company, organized under such a statute, is a corporation “ formed under a general law,” within the meaning of article 13, section 2, of the present constitution, and as such, liable to all the limitations and restrictions therein, equally as corporations organized under the general corporation laws of the state, enacted under the present constitution. The fact that it is formed out of old defunct corporations does not make it any the less a corporation created by thelcgislature. It is not the material out of which it is formed, but the plastic hand which formed it, that we are to look to for its character and status under the constitution.
But it is argued, if we understand counsel, that the consolidated company has the right to fix any l-ates of fare for passage which it deems proper over the old line of the Junction Railroad, because the original company had that right, and because all its franchises and rights have been transferred to the consolidated company. That argument would have been good before the passage of the act of 1873, or of some other act limiting or modifying that right. This right to take unlimited rates of fare, or to take specified rates of fare, is no more exempt from legislative control and alteration than it would have been had the company been formed under the general corporation law of 1852, or under any other general law enacted since the adoption of the present constitution. All the rights and franchises of the company—-this right to make and take-rates of fare among the rest—were derived to the company under and by virtue of the act of 1856, and they are all alike subject, irrespective of the rights of the old companies, to the legislative power of alteration, amendment, and ’"epeal.
But counsel argue, or seem to argue, that the legislature have no power to alter or regulate rates of fare allowed to ■ corporations organized under the present constitution. The claim seems to be, that section 2 of article 13 of the constitution- merely reserves to the legislature the power to- *94 prevent the organization of new companies under the law, by repealing or changing it, and that corporations organized under it before the repeal or change are beyond legislative control, equally as though no such provision bad been inserted in the constitution. We can by no means assent to such a proposition. This section of the constitution is to be construed in connection with section 2 of article 1, which declares that “ no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.”
We have no hesitation in saying that the right in ques-. tion comes under these provisions. The two sections, taken together, most clearly reserve the legislative power in question. The power to repeal the law, and thereby prevent the formation of future corporations under it, existed under the old constitution. If counsel are right in their claim, then these provisions of the present constitution mean nothing, or affect nothing.

Judgment affirmed.

McIlvaine, C. J., White, Rex, and Gilmore, JJ., concurred.